# HARRY W. WILLSON *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Penalties and Liquidated Damages—Deposit Made in Part Perform-
ance of a Contract—Forfeiture of Deposit Upon Breach of Con-
tract—Construction of Contracts—Measure of Damages.*

When a contract provides that in the event of a failure to perform it a
certain sum shall be paid by the party in default to the other party,
such sum is either a penalty or liquidated damages.  If the sum des-
ignated is held to be liquidated damages, then upon breach of the
contract that particular amount is recoverable.  But if the sum is
regarded as a penalty, its place in the contract gives it no weight, and
a recovery for a breach will be limited to the extent of the injury
actually sustained and proved.  In the case of liquidated damages
the whole of the sum named is recoverable upon default, although
the actual damages be nominal, while in the case of a penalty, only
such damages as have been really incurred and are satisfactorily
shown can be recovered for a breach.

Where a reasonable sum is stipulated to be paid as liquidated damages
for the breach of a contract, it will be regarded as such and not as
a penalty, when from the nature of the contract, the amount of dam-
ages arising from its breach are uncertain and cannot be ascertained
upon an issue of fact.

But when the damages arising from the breach are easily and exactly
ascertainable, such stipulation is generally regarded as a penalty.

In doubtful cases the inclination of the Court is to treat the stipulated
sum as a penalty.

Where in a contract for the sale of land the parties agree that the sum
deposited by the purchaser in part payment shall be forfeited if he
fails to carry out his contract, no part of such deposit can be recov-
ered back in the event of a breach of the contract by the purchaser
upon the ground that the forfeiture was in the nature of a penalty
and that the actual loss to the vendor was less than the amount of
the deposit.

If the deposit be not made in part performance of the contract, but be
collateral to the same, and a mere guaranty that its provisions will
be observed, and if the making of the deposit is not a part of the
thing to be done in execution of the contract, but is required solely
as a condition precedent to entering into the contract which relates
to something else, then such deposit will not be treated as liquidated

damages merely because it is a deposit, but will be either liquidated damages or a penalty as the circumstances of the case may indicate.

A municipal corporation advertised for sealed proposals for the supply of certain articles, and plaintiff made a bid according to a prescribed form which provided that the name of a surety must be written in the proposal, that each bid must be accompanied by a certified check payable to the municipality, and that "if the successful bidders enter into contract with bond without delay their checks will be returned to them as will those of the unsuccessful bidders." The contract was awarded to the plaintiff, the lowest bidder, who had sent in with his bid a check for $500, but he was afterwards unable, without any fault of his own, to obtain the suretyship of the person named in his bid, or that of any other surety. The city then advertised again for bids and the contract was awarded to another bidder for a less sum than that offered by the plaintiff, so that the city not only lost no money by the failure of the plaintiff to give bond, but saved a considerable sum. In an action by the plaintiff to recover the $500 deposited by him, *Held,*

1st. That it was implied under the contract that so much of the deposit as would compensate the city for plaintiff's failure to furnish bond was designed by the parties to be applied to the reimbursement of the city.

2nd. That the damages resulting from the plaintiff's failure to give bond was the difference, if anything, between the amount of the plaintiff's bid and that of the subsequent successful bidder and the expense of readvertising for bids, and that such damages are exactly ascertainable.

3rd. That the deposit by the plaintiff was not part of a sum ultimately payable, under the contract, to the city, but was designed to serve the same purpose that a guaranty or other indemnity would have done, *i. e.,* to save the city harmless from any actual loss which might arise from a failure on the part of the plaintiff to furnish bond conditioned for the performance of his accepted proposal.

4th. That since the city had suffered no loss in consequence of plaintiff's failure to give bond, he was entitled to demand a return of the deposit made by him.

Appeal from a *pro forma* judgment of the Court of Common Pleas of Baltimore City sustaining a demurrer to plaintiff's declaration.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE and RUSSUM, JJ.

*Frank Gosnell* (with whom was *Ernest S. McElroy* on the brief), for the plaintiff.

It is respectfully submitted that the question is entirely free from difficulty. It is to be observed that no provision is made for the contingency which actually happened in this case, *i. e.*, the *failure* of the bidder to enter into contract with surety. The implication, however, is that in such event and upon the further contingency of damage accruing to the city, caused by being compelled to pay a larger sum to another bidder, the deposit would stand as an indemnity for any such loss. Had appellant " entered into bond without delay," then by the terms of the specifications the $500 would have been returned to him, the surety in that event taking the place of the deposit. If, as is true, after giving bond, a default had taken place, no recovery could be had unless loss was sustained ; how can it be successfully contended that because some one else, acceptable to the city, has satisfactorily performed the contract which appellant should have executed, with the result of a net gain to the city, instead of a loss, that he, the appellant, has forfeited to the appellee his deposit of $500 ? All the authorities fully sustain the position of the appellant. *Dyer* v. *Dorsey*, 1 G. & J. 440 ; *Geiger* v. *Western Md. R. R. Co.*, 41 Md. 4, 14, 15 ; *Hough* v. *Kugler*, 36 Md. 186, 195 ; *Clement* v. *Schuylkill River, &c., Co.*, 132 Pa. St. 445 ; *Easton* v. *Cressey*, 100 Cal. 75, 78 ; *Condon* v. *Kemper*, 45 Kan. 126 ; *Tinkham* v. *Satori*, 44 Mo. App. 659, 663, 664.

In *Lindsay v. Rockwall County*, 30 S. W. Reporter, 380, decided in 1895, by the Texas Court of Appeals, it appeared that the defendant advertised for bids for a Court House ; the notice required each bid to be accompanied by a check for $500, " *as a guaranty of good faith that the bidder, in case his bid is accepted, will enter into contract, &c.*" Plaintiff's bid was accepted, but he failed to enter into contract within a reasonable time ; whereupon, the defendant appropriated the check. *Held*, that the money deposited by the plaintiff was not liquidated damages, *but a penalty*, and de-

fendant was entitled *to retain only so much as would cover its actual damages.*

In a contract to raise a house, it was stipulated that $150 per week should be paid for each and every week after the expiration of thirty days from the date of the delivery of the property, but the damages for delay were not designated either as a *penalty* or as *liquidated damages.*  The work was not completed within the thirty days.  In an action for damages for breach of the contract, the jury having been instructed that the sum stipulated constituted liquidated damages, gave a verdict for $4,400, being $1,000 in excess of the full value of. the house.  The Supreme Court of Pennsylvania declared the provision to be *unconscionable,* and said " it would be an insult to the intelligence of the parties to suppose they ever contemplated such a result when they entered into the contract.  The damages for the delay were easily ascertainable   *   *   *   Upon another trial they *will be entitled to recover for any loss they can show they have · sustained."   Clement* v. *Schuylkill River, &c., Co.,* 1·32  Pa. St. 445.

*Thomas G. Hayes, City Counsellor,* for the appellee.

The clause in the advertisement referring to the deposit is as follows :  " The name of a· surety and a certified check (as fully stated in the specifications), must be sent with the proposal."   The provision in specifications, which the appellant accepted and signed, is as follows :  " If the successful bidders enter into contract with bond without delay their checks will be returned, as will those of the unsuccessful bidders."   The above stipulations or requirements clearly create a contract between the parties—if not express, certainly implied—that on a failure of the successful bidders to ." enter into contract with bond without delay " the $500 was not to be returned to the party who was in default. Art. 44, sec. 22, City Code, 1893, provides that "the Board of Commissioners of Public Schools shall advertise for proposals in the purchase of all supplies for said schools to the

amount of fifty dollars and over, &c." This board having, therefore, the power to advertise for proposals in the purchase of school supplies, could attach as a condition to those who bid, a deposit of $500, or any other reasonable requirement not inconsistent with the statutes and ordinances. The ordinances do not forbid the requiring of a deposit to insure the *bona fides* of bidders. It is a common practice to do so, and a moment's reflection will show how necessary it is to do so in order to prevent straw bids being put in. If this deposit was not required it is possible for a bidder to put in a bid at, say $500, for himself, and another bid at $400 in the name of some irresponsible friend or employee, and, if there is no intervening bid, to let his friend or employee refuse to do the work and take it himself at $500, and, if there is an intervening bid, to take the contract in the name of his friend or employee at $400. Such a regulation requiring a deposit makes a man put in his *bona fide* lowest bid in his own name, or run the risk of paying a substantial sum as liquidated damages. If this amount is not enforced as liquidated damages and the straw bidder is allowed to sue for the money and recover it back, if a jury should say the city has lost nothing by his default, the beneficial effect of the regulation in requiring the deposit is destroyed.

It must be remembered that this is a case of a deposit of a specified sum in the hands of a stakeholder to abide the result of a certain event, and is entirely different in fact, and the law applicable, from the case of a stipulation in a contract or bond to forfeit a certain sum in case of default. The rule of law is quite different and distinct in the two cases. In Maryland, we have had an able opinion of our Court of Appeals, on the latter class of cases, in *Geiger* v. *Western Md. R. Co.*, 41 Md. 4, but none on the former class of cases.

Where a deposit is made, as in the case at bar, it is almost invariably held to be taken as liquidated damages, and not a penalty, while where the amount to be forfeited

is a stipulation in a contract or bond, it is otherwise and generally considered a penalty.   In the English leading case of *Wallis* v. *Smith*, 21 Ch. Div. 250, the whole question as to the difference in principle, which exists in law, between a stipulated sum named in contract or bond, which is to be forfeited upon the failure to do a certain thing and the deposit of a specific sum in the hands of a stakeholder to be forfeited under similar conditions is discussed ; in the former case, the specified amount may or may not be liquidated damages or penalty according to the intention of the parties, and in the latter case of a deposit it is always to be considered liquidated damages.   See *Reilley* v. *Jones*, 1 Bing. 302 ; *Lea* v. *Whitaker*, L. R. 8 C. P. 70 ; *Hinton* v. *Sparks*, L. R. 3 C. P. 65.   In *Sanford* v. *Bank*, (Iowa) 63 N. W. Rep. 459, in which there was a *deposit* of $500 under the following stipulation in the agreement : " Hamilton is to deposit $500 in the First National Bank of Belle Plaine, Iowa, as a forfeit in case he should refuse to comply with the terms of this contract."   The Court held that the $500 was liquidated damages, notwithstanding the word " forfeit " ordinarily means a " *penalty.*"   The Iowa Court said on this point, in holding it liquidated damages, as follows : " Another very strong circumstance is the *deposit* of the $500 with the bank by Hamilton under the terms of the contract.   And while it was called a ' forfeit,' which ordinarily means a ' penalty,' where used in a contract, yet, when *deposited* with a third person, as in this case, we think it is evident that the parties intended that Hamilton should lose the whole of it in the event he failed to comply with his contract."   See also *Nelson* v. *Jonesboro*, (Ark.) 20 S. W. Rep. 1093 ; *Sanders* v. *Carter*, (Ga.) 17 S. E. Rep. 345 ; 1 Sed'g Dam. 414 ; *Parr* v. *Village of Greenbush*, 42 Hun, 234.

The only case we have been able to find holding a contrary doctrine as to the deposits is the case of *Lindsay* v. *Rockwall County*, 30 S. W. Rep., 380.   The opinion is brief.   It contains no reasoning, and is without a reference

to an authority to support the views of the Court, and is opposed by an unbroken line of decisions. It is confidently believed that this Court will not follow this Texas case. See *Eakin* v. *Scott*, 70 Tex. 442.

McSHERRY, C. J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore, through the Commissioners of Public Schools, advertised for sealed proposals for furnishing the schools of the city with desks and other necessary appliances. The bids were required to be made out upon forms which contained various stipulations. Amongst these it was provided that "the full name and address of a surety must be written on the proposal, and each proposal must be accompanied by a certified check for five hundred dollars * * * * * * said check to be payable to the Mayor and City Council of Baltimore. *If the successful bidders enter into contract with bond without delay, their checks will be returned as will those of the unsuccessful bidders.* No proposal will be entertained which does not comply with the terms hereof." The appellant filled out one of these forms, specified the prices at which he would furnish the needed supplies, gave the name and address of his surety and enclosed his certified check for five hundred dollars, payable to the appellee. His bid being the lowest he was awarded the contract; but through no fault of his own and though he acted in entire good faith, he was unable in spite of his efforts, to furnish the signature of the surety he had named in his bid, and he failed, without being at all to blame, to secure any other surety on his bond. Thereupon the commissioners readvertised for bids. These they obtained and accepted. The new bids were for sums much less than those named by the appellant in his bid, and in consequence the city not only lost no money by the failure of the appellant to furnish a bond and to fulfill his contract, but in fact saved a considerable amount. The appellant then demanded the return of the five hundred dollars which he had deposited with his bid,

but the city refused to surrender the money and claimed the right to hold it. Suit was thereafter brought by him against the city for the recovery of the five hundred dollars deposited. The defendant demurred to the declaration and a judgment was entered *pro forma* for the city, and the plaintiff appealed.

There is no question of pleading involved. The inquiry is whether, under the circumstances stated, the appellant is entitled to recover back the five hundred dollars he deposited with his bid. The facts above set forth are all alleged in the declaration and being well pleaded are, of course, admitted by the demurrer.

On the part of the appellant it is insisted that the five hundred dollars deposit was designed to be and in reality was a penalty; whilst on the part of the city it is claimed that the sum named was intended to be and in fact was liquidated or stipulated damages which, for any breach of the appellant's bid or proposal, was to be retained by the city without reference to whether the city had actually sustained any injury or not. The distinction between a penalty and liquidated damages is of the utmost importance; and upon the decision in any given case between them depends the question whether a sum stipulated to be paid upon a breach of the contract shall be treated as a debt to be arbitrarily enforced without regard to the actual loss; or whether, on the other hand, it shall be discarded to let in an inquiry as to the extent of the damage really sustained in consequence of an omission or refusal to perform the agreement. If the sum designated is held to be liquidated damages the only evidence necessary to warrant a recovery of that particular amount is that the contract to which it relates has been broken. But if the sum is regarded as a mere penal sum, its place in the contract gives it no weight, and a recovery for a breach of the undertaking will be limited to the extent of the loss or injury actually sustained and proved. In the one instance, therefore, the whole of the sum is recoverable, when there has been a default, though the actual damages

be nominal ; whilst in the other, only such damages as have been really incurred and are satisfactorily shown can be assessed and awarded for a breach.   It is obvious, then, that the pending controversy turns upon the question whether the five hundred dollars deposit is liquidated damages or a penalty.    If it be the former the plaintiff has no right to recover it back, but if it be the latter the city cannot lawfully retain it, except to the extent that actual damage has been sustained.

Whether a sum named in a contract to be paid by a party in default on its breach is to be considered liquidated damages or merely a penalty, is one of the most difficult and perplexing inquiries encountered in the construction of written agreements.   The solution of that question, whilst to some extent controlled by artificial general rules which are not wholly in harmony with the ordinary canons of construction, depends in a large measure at least upon the particular facts and circumstances of each separate case.    There are to be found both decisions and *dicta* that are conflicting and irreconcilable ; but the general principles which are usually invoked, and which are peculiar to contracts of this character, are nowhere seriously disputed or denied.   As just compensation for the injury done is the end which the law aims to reach, the intention of the parties at the time the contract was entered into is often, though not always, given weight ; and whilst the language they have used in the instrument, if they declare that the damages shall be liquidated, is a circumstance that may have its influence, *Geiger* v. *Western Md. R. R. Co.*, 41 Md. 4 ; yet even their explicit words will be sometimes disregarded, *Hough* v. *Kugler*, 36 Md. 195, and the measure of damages will be restricted to such as the evidence shows have been actually sustained, if the entire agreement and the peculiar circumstances of the subject-matter of the contract indicate that the reason and justice of the case require this to be done. *Kemble* v. *Farren*, 6 Bing. 141 ; *Foley* v. *McKeegan*, 4 Iowa, 1 ; *Watts* v. *Sheppard*, 2 Ala. 425 ; *Streeper* v. *Williams*,

212 WILLSON vs. M. & C. C. OF BALTIMORE.

Opinion of the Court. [83

48 Pa. St. 450; *Perkins* v. *Lyman*, 11 Mass. 76; *Condon* v. *Kemper*, 47 Kan. 126; S. C. 13 L. R. A. 671 and notes; *Chamberlain* v. *Bayley*, 11 N. H. 234; *Davis* v. *Fenton*, 6 Bar. & Cres. 216; *Fitzpatrick* v. *Cottingham*, 14 Wis. 237; *Fisk* v. *Gray*, 11 Allen, 132; *Green* v. *Price*, 13 M. & W. 701. It is equally well settled that a sum, if it be at all reasonable and is stipulated to be paid as liquidated damages for the breach of a contract, will be regarded as such, and not as a penalty, where from the nature of the covenant the damages arising from its breach are wholly uncertain and cannot be ascertained upon an issue of fact. A common instance is the case of agreements between professional men binding a retiring partner, or an apprentice or clerk not to interfere with the business of the other. *Glassworthy* v. *Strull*, 1 Exch. 659; *Rawlinson* v. *Clarke*, 14 M. & W. 187; *Mercer* v. *Irving*, E. B & E. 563. But a stipulation to pay a specified sum upon the non-performance of a contract is regarded as a penalty rather than as liquidated damages if the intention of the parties as to its effect is at all doubtful or is of equivocal interpretation. *Shute* v. *Taylor*, 5 Metc. 61; *Dimerch* v. *Corlett*, 12 Moore P. C. C. 199; *Crisdec* v. *Bolton*, 3 Car. & P. 240; *Chilliner* v. *Chilliner*, 2 Ves. Sr. 528; *Coles* v. *Sims*, 5 DeG. M. & G. 1. And such a stipulation is generally regarded as a penalty in the absence of a clear indication of a contrary intention by the parties at the time the contract was executed, where the agreement is certain and the damages for a breach thereof are easily and exactly ascertainable. *Burrell* v. *Daggett*, 77 Me. 545; *Brown* v. *Bellows*, 4 Pick. 179. Finally, the tendency of late years has been to regard the statements of the parties as to liquidated damages in the light of a penalty unless the contrary intention is unequivocally expressed, so that harsh provisions will be avoided and compensation alone will be awarded. *Gammon* v. *Hone*, 14 Me. 250; *Leggett* v. *N. Y. Mut. L. Ins. Co.*, 53 N. Y. 394; *Brown* v. *Bellows*, *supra*, 2 Green Ev. secs. 258, 259.

Now, it will be observed that the contract between the

WILLSON *vs.* M. & C. C. OF BALTIMORE. 213

appellant and the appellee, evidenced by the bid filed and accepted, has not a word in it descriptive of the five hundred-dollar deposit as either liquidated damages or a penalty. It is clear, therefore, that the parties themselves have not by any term or provision of the agreement declared that the deposit shall be either the one or the other, but have left the question at large ; and it is equally clear that there is nothing in the subject-matter of the agreement which imperatively requires that the deposit be characterized as liquidated damages, especially as the decided inclination of the Courts in doubtful cases even is to treat the stipulated sum as merely a penalty. Indeed there is no explicit forfeiture of the deposit at all. The contract provides simply that, " if the successful bidders enter into contract with bond without delay, their checks will be returned ; " but it is nowhere expressly declared that a failure to enter into bond shall entitle the city to the whole amount of the deposit or to any part of it, though it is palpably implied that so much of it as will be a just compensation for any loss that may result to the city from the failure of the bidder to furnish the bond was, in view of the whole subject-matter, designed by the parties to be applied by the city to its own reimbursement. But beyond this, the exact amount of loss which would result to the city by the failure of a bidder to give the required bond is capable of definite and precise ascertainment. A failure to give the bond is a breach of the contract and the damages which would result from that breach would be the difference the city paid, if anything, in excess of the amount of the unexecuted bid, and also the expenses of a re-advertising for new bids. These elements of damage are neither uncertain nor difficult of ascertainment by a jury, and this fact is one of the recognized tests resorted to for distinguishing between liquidated damages and a penalty. *Geiger* v. *Western Md. R. R. Co., supra.* Not only, then, is there no provision expressly declaring this deposit to be liquidated damages, but to treat it as such would require the superaddition by implication of a distinct term to the con-

tract, which is not permissible, and the reversal of the doctrine that Courts lean strongly against upholding a specified sum as liquidated damages where such an interpretation is of doubtful accuracy and leads to manifest injustice. That an interpretation which treats this deposit as liquidated damages would, to say the least, be of doubtful accuracy, cannot be disputed ; that it would be unjust in this particular case in its results is scarcely open to discussion. The appellant is conceded to have acted in perfect good faith ; the city has not only not lost anything by his failure to give the bond, but it has actually gained thereby a considerable sum, and it would be unconscionable (*Cutler* v. *How*, 8 Mass. 257), under these conditions, for it to retain the five hundred dollars as stipulated and liquidated damages for a technical breach which has occasioned no appreciable injury. We discover nothing on the face of the contract, nothing in all the surrounding circumstances or the subject-matter, and nothing in the rules of law which will justify us in holding this deposit to be liquidated damages unless the remaining proposition to be considered sustains the appellee's contention. That proposition is that where a sum is *deposited*, either with a third person or with the other party to the contract, it is invariably treated as liquidated damages, and the cases of *Wallis* v. *Smith*, 21 Ch. Div. 250 ; *Hinton* v. *Sparks*, 4 R. 3 C. P. 161, and some others have been referred to.

In *Wallis* v. *Smith*, the plaintiff entered into a contract with the defendant, who was a builder, to sell him an estate for 70,000£ which was to be expended by the defendant in building on the estate. The contract contained numerous provisions, and amongst other things that a deposit of 5,000£ should be paid by the defendant into the bankers to the joint account of the plaintiff and defendant, of which 500£ was to be paid on the execution of the contract and the remainder within seven months. If the plaintiff could not make good title the deposit of 500£ was to be returned and the plaintiff was to pay the defendant 5,000£ as liqui-

dated damages.   And if the defendant should commit a substantial breach of the contract either in not proceeding with due diligence to carry out the works or in failing to perform any of the provisions of the contract, then and in either event the deposit of 5,000£ should be forfeited, and if it had not been paid the defendant should forfeit and pay to the plaintiff by way of liquidated damages the sum of 5,000£ and the agreement should be void, but credit was to be given to the defendant for all moneys actually expended.   Whilst it was held that the 5,000£ was to be treated as liquidated damages, SIR GEORGE JESSEL, Master of the Rolls, described it as " a deposit in part payment of the nominal purchase money."   And in *Hinton* v. *Sparks*, the covenant was " if the purchaser shall fail to perform his part of the agreement then the deposit money shall become forfeited in part of the following damages."   These cases and others to which allusion might be made relate to a different class of contracts. Where parties contract, as they frequently do by a condition of sale, that the deposit money shall be forfeited if the purchaser fail to carry out his contract, the deposit cannot, nor can any part of it, be recovered back on the ground that the forfeiture was in the nature of a penalty, and the actual loss to the vendor was less than the amount of the deposit.   In fact, the cases distinguishing between a penalty and liquidated damages do not apply to a pecuniary deposit, which is in reality not a pledge but a payment in part of the purchase money.   *Wood's Mayne on Dam.*, sec. 245 ; *Sugd. Ven. & Pur.*, ch. 1, secs. 3, 18.   Thus in *Chaude* v. *Shepard*, 122 N. Y. 397, it appeared that the defendant leased certain premises to the plaintiff who deposited with him a sum of money under a provision in the lease that the defendant should hold the same as security for the faithful performance by the plaintiff of his covenants in the lease, the same to be applied as payment of rent on the last three months of the term, provided the lease was not sooner terminated by plaintiff's failure to perform, in which last event it was declared that the sum paid should be forfeited and

become the property of the defendant absolutely.   Default
being made in the payment of one month's rent plaintiff was
dispossessed by the defendant, who refused to pay back any
part of the deposit.   In an action to recover the same, less
the month's rent, it was held that the provision in reference
to the deposit was not intended to give it the character of
liquidated damages, but rather as a penalty ; that the deposit
was a security for the performance of plaintiff's covenants.   In
the opinion of the Court it was said : ." It is, however, urged
by the learned counsel for the defendant that as the money
was actually placed in the possession of the defendant pur-
suant to the contract at the time of the execution of the
lease, the disposition of it is governed by a different rule
than that which would have been applicable if the claim to
it had been founded upon the executory agreement of the
plaintiff to pay it. . That would have been so if the money
had been paid upon the contract by way of partial perform-
ance by the plaintiff." . Reference is then made to *Page* v.
*McDonnell*, 55 N. Y. 299; *Lawrence* v. *Miller*, 86 Id. 131 ;
*Havens* v. *Patterson*, 43 Id. 218.   And so where there was
a sale and a deposit was made under a covenant providing
that " if the purchaser shall neglect or fail to comply with
any of the above conditions, the deposit shall be forfeited
as liquidated damages to be retained by the vendors," it was
held that this applied only to a breach of the conditions of
sale, and not to a breach of the entire contract to buy.
*Icely* v. *Grew*, 6 Nev. & M. 467 ; *Essex* y. *Daniell*, L. R.
10 C. P. 538.   It is stated with great clearness and accuracy
by Mr. Brantly in his admirable work on the Law of Con-
tract, p. 192, that " when it is provided that the sum de-
posited in part performance of the contract is to be forfeited
upon failure of the party to complete it, such sum, if not
excessive, is liquidated damages."   Conversely, if the de-
posit be not made in part performance of the contract, but
be collateral to the contract and a mere guaranty that its
provisions will be observed ; and if the making of the de-
posit is not a part of the thing to be done under or in exe-

cution of the contract, but is required simply and solely as a condition precedent to entering into the contract which distinctly relates to something else ; then obviously such a deposit would not be treated as liquidated damages, merely because it is a deposit, but would be either liquidated damages or a penalty as the rules applicable to such a question might cause the Court to determine.

We are not prepared to expand the doctrine relating to deposits made on the purchase of land by applying it to contracts of the character now before us. The deposit in the case at bar when made was not part of a sum ultimately payable under the contract to the city by the appellant; nor was it set apart either in express terms or impliedly, to meet an obligation arising out of a purchase ; but it was designed to serve precisely the same purpose that a guaranty or other indemnity would have done—to save the city harmlees from any actual loss which might arise or grow out of a failure on the part of a bidder to furnish a bond conditioned for the performance of his accepted proposal. It would introduce a sweeping departure from established principles to hold as an unbending rule applicable alike to al contracts, no matter what their nature or subject, that a deposit made to secure their due performance must invariably . be treated as liquidated damages and never as a penalty . Such a rule would in its application ignore or arbitrarily over-ride all other principles of interpretation and would force Courts to regard as liquidated damages sums which obviously would not, according to the canons of construction to which we have alluded, ordinarily be so considered. If the contract now before us falls within the decision in *Wallis* v. *Smith*, and *Hinton* v. *Sparks*, there is no reason for excluding any other contract from the operation of the same doctrine. Then, no matter how apparent it might b e in a given case that the parties intended the deposit to be a penalty, and no matter how obvious it might be that the subject-matter of the agreement, the surrounding circumstances attending its execution and the rules of law appli-

cable to its construction did not require or permit that the deposit should be treated as liquidated damages; still the mere naked fact that a deposit had been made, or exacted, would of itself, without more, convert what would otherwise undeniably be a penalty into stipulated damages. We see no reason for giving to a deposit such a far-reaching effect as that, and without pausing at this place to review the other cases cited at the argument, we hold that the doctrine of *Wallis* v. *Smith*, and *Hinton* v. *Sparks*, with which we fully concur, has, and in the nature of things, can have no application to the contract now before us.

Finally it was insisted that when an agreement is in the alternative to do some particular thing or to pay a given sum of money, the Court will hold the party failing to have had his election, and compel him to pay the money. *Pa. R. R.* v. *Reichert*, 58 Md. 278 ; *Sedw. on Dam.*, sec. 423, were relied on to support this doctrine. The case in 58 Md. certainly does lay down the rule contended for, but the state of facts to which the rule was there applied is totally different from the facts of this case. There Reichert owned a coal yard and a trestle connecting it with a railroad. Another railroad company needing part of his land for the construction of its road condemned it. The construction of its road required that the trestle should be removed. The jury of condemnation awarded six hundred dollars damages, and further awarded that the condemning road should erect for Reichert another trestle, and then provided in the inquisition that upon its failure to comply it should pay the further sum of fifteen hundred dollars. This inquisition was accepted by both parties and was ratified by their consent. The railroad company then neglected to build the trestle and Reichert brought suit. This Court held that the award of fifteen hundred dollars was not a penalty. That the jury of inquisition had fixed the sum to be paid if the company failed to construct the trestle, and that the alternative thus given and accepted by the agreement of the parties bound the company to perform the con-

WILLSON vs. M. & C. C. OF BALTIMORE.   219

Md.]                      Opinion of the Court.

ditions upon which it took Reichert's property or to pay the sum which the jury fixed and the parties agreed to in lieu of a compliance with the inquisition. There is in the pending case no alternative agreement at all—certainly no express or unequivocal one; and before the doctrine sanctioned in 58 *Md.* can be applied there must by sheer construction be imported into the proposal or bid which the appellant made a term that is not there now—a stipulation either to sign the bond with a surety or to pay five hundred dollars. For the purpose of declaring the deposit to be liquidated damages the contract actually made would have to be changed into a totally different agreement. This, of course, cannot be done.

The other cases cited and relied on by the distinguished counsel for the appellee were *Sanford* v. *First Nat. Bank et al.*, 63 Northwest Rep. 459; *Wilson* v. *Jonesboro*, 20 Southwest Rep. 1093; *Sanders* v. *Carter*, 17 Southeast Rep. 345. We have no difficulty in distinguishing between these cases and the case at bar. The case of *Sanford* v. *First Nat. Bank* belongs to the same group as *Wallis* v. *Smith, supra.* There was a contract for the purchase of a one-half interest in a business and a deposit of five hundred dollars was made with a bank by the purchaser, as a forfeit in case he should fail to comply with the contract of purchase. Under all the circumstances this deposit was treated as liquidated damages. The case of *Wilson* v. *Jonesboro* merely applies the doctrine that where the loss arising from a breach cannot be measured " by any rule of damages, it is reasonable to suppose that ' the parties ' intended to fix by the terms of the contract the precise sum recoverable for its breach." And in *Sanders* v. *Carter*, though there was a deposit, it appeared by extrinsic evidence that the subject-matter of the agreement was such that the damages resulting from a breach thereof could not be readily or accurately ascertained, which fact must have been in the contemplation of the parties in fixing the amount of the forfeiture, and no facts being shown which

would indicate that the sum so agreed on was dispropor-
tionate, unreasonable and unjust, the whole amount was
treated as liquidated damages.

For the reasons we have given the *pro forma* judgment
entered on the demurrer for the defendant must be reversed
and a new trial will be awarded.

> *Judgment reversed with costs above and
> below and new trial awarded.*