## THE BALTIMORE BRIDGE CO.

*vs.*

## THE UNITED RAILWAYS AND ELECTRIC CO.

*Contracts*: *liquidated damages.*

Where the parties, at or before the time of the execution of a contract, agree upon and name a sum therein to be considered as liquidated damages in lieu of anticipated damages which are, in their nature, uncertain and incapable of exact ascertainment, such sum will be regarded as *liquidated damages,* unless the sum so agreed upon is so grossly excessive and out of all proportion to the damages that might reasonably be anticipated.

pp. 214-215

In such cases, the intention of the parties is one of the essential facts, and is to be sought from the contract itself, and from a consideration of all the facts and circumstances with which the parties were confronted at the time of the execution of the contract.                                    p. 215

If it should appear that the damages actually sustained were in fact less than the sum so stipulated, such sum is not, for that reason, to be characterized as a penalty, unless it be so exorbitant as to show that it was not a *bona fide* effort, made at or before the execution of the contract, to estimate the damages reasonably to be anticipated.                         p. 215

But if the amount stipulated is found to be inadequate, the parties are still bound by the agreement, and no greater sum can be recovered.                                    p. 215

A contract by a street railway company with a bridge company, for the rebuilding of a viaduct that carried the railway tracks over a stream, provided, among other things, for the payment of $25.00 a day for each and every day's delay beyond the time stipulated for the completion of the work; the contract specifically declared that such payment "was to be as liquidated damages, and not as a penalty, as time was of the essence," and it was impossible at the time of entering upon the contract to estimate the substantial damages that delay would cause the

railway company. *Held,* that, in considering the actual damages caused the company, the inconvenience and expense of operating its cars over the structure, and of protecting the passengers and employees, while the work was in progress, and further the loss of fares occasioned if timid people were deterred from using the cars, could all be taken into account, and that the liquidated damages claimed were not excessive.              p. 219

The ruling of a trial court in refusing to allow certain questions to be asked a witness, does not constitute reversible error, when the testimony so sought to be adduced was elsewhere admitted without objection.                                      p. 219

*Decided February 9th, 1915.*

Appeal from the Baltimore City Court.   (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joseph N. Ulman* and *Clarence A. Tucker* (with whom were *Samuel J. Harman* and *Charles H. Knapp* on the brief), for the appellant.

*Robert F. Leach, Jr., Assistant City Solicitor* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellant, the Baltimore Bridge Company, on the 12th day of April, 1911, entered into a written agreement with the United Railways and Electric Company of Baltimore, the appellee, to do certain work, and furnish the material therefor, upon a viaduct of the appellee company known as the Huntington Avenue Viaduct, in the City of Baltimore, for which it was "to be paid for the full completion of the work: Steel work, $5,845.87; concrete floors, $453.00; concrete foundations or footings, $9.00 per cubic yard."

By the terms of the contract the work was to be completed "within four months from the date of the agreement, or sooner if possible," and if not completed at such time the appellee company was authorized to retain as liquidated damages the sum of twenty-five dollars for each day the work remained unfinished after the date designated for its completion.

The exact wording of the agreement in respect to this provision is that "time shall be of the essence of this agreement, and for each day the completion of the work is delayed beyond the time hereinbefore limited as the time for its completion, the contractor agrees that the company may retain from the final payment to be made hereunder the sum ($25.00) indicated in Schedule E forming part hereof. It being impossible at the time of entering into this agreement to estimate the substantial damage which will result to the company from such delay, the said sum is agreed upon as the liquidated damages which the company will suffer each day by reason thereof and not as a penalty, any decision or ruling of the Courts to the contrary notwithstanding."

The work under this agreement was not completed until the ninth day of October, 1911, fifty-nine days after the date designated for its completion.

The compensation that was to be paid under the contract for the work done and material furnished, had it been completed at the time named in the agreement, amounted to $6,931.57. Of this amount the appellee company retained, as liquidated damages, $1,475.00, or twenty-five dollars for each of the fifty-nine days the work remained unfinished after the date named in the contract for its completion, and paid the balance ($5,456.57) to the appellant company.

It was to recover the amount so retained by the appellee that the suit in this case was instituted. At the conclusion of the case the Court directed a verdict for the defendant, and upon such verdict a judgment was entered thereon for the defendant. It is from that judgment this appeal is taken.

The work was satisfactorily done, and the inquiry here is, whether the amount stipulated in the agreement to be paid by the appellant in the event of its failure to complete the work within the designated period, is to be regarded as liquidated damages or as a penalty.

It is contended by the appellant that the amount so retained was designed to be, and in fact was, a penalty; while the appellee contends that the sum named was intended to be, and in fact was, liquidated or stipulated damages that were agreed upon at the time of the execution of the agreement to be retained by it should the appellant company fail to complete the work within the designated period.

It was said by JUDGE MCSHERRY in *Willson* v. *Mayor and City Council of Baltimore,* 83 Md. 210, "Whether a sum named in a contract to be paid by a party in default on its breach is to be considered liquidated damages or merely a penalty is one of the most difficult and perplexing inquiries encountered in the construction of a written instrument. The solution of that question * * * depends in a large measure at least upon the particular facts and circumstances of each separate case. * * * A stipulation to pay a specified sum upon the non-performance of a contract is regarded as a penalty rather than as liquidated damages if the intention of the party as to its effect is at all doubtful or is of equivocal interpretion * * * and where * * * the damages for a breach thereof are easily and exactly ascertainable.

"It is equally well settled that a sum, if it be at all reasonable and is stipulated to be paid as liquidated damages for the breach of a contract, will be regarded as such, and not as a penalty, where from the nature of the covenant the damages arising from its breach are wholly uncertain and cannot be ascertained upon an issue of fact." *Willson* v. *Mayor and City Council of Baltimore, supra.*

In the case of *Geiger* v. *The Western Md. R. R. Co.,* 41 Md. 15, our predecessors said: "Where the parties have declared in clear and unambiguous terms that a certain sum shall be paid by way of compensation, upon a breach of the

contract, * * * the damages arising from the breach of which are uncertain, and incapable of being ascertained by any fixed pecuniary standard, and especially where the contract provides that the sum so claimed shall be paid as *liquidated damages,* the sum so fixed and agreed upon will be considered as compensation for damages resulting from the breach, and not as a penalty." See cases there cited, also *Crawford* v. *Heatwold* (Va.), 34 L. R. A. (N. S.), 587; *Stratton* v. *Fike,* 166 Ala. 210; *Railroad Co.* v. *Gaba,* 78 Kan. 432; *Nilson* v. *Jonesboro,* 57 Ark. 168; *Ward* v. *Hudson River Bldg. Co.,* 125 N. Y. 230; *Barber Asphalt Paving Co.* v. *City of Wabash,* 86 N. E. 1036; *Wallace Iron Works* v. *Monmouth Park Assn.* (N. J.), 19 L. R. A. 456.

In the more recent case of the *United Surety Co.* v. *Summers,* 110 Md. 95, in which the agreement between Lawrence, a builder and contractor, and Summers, for the furnishing and erection of the re-enforced concrete work in and about a certain building then in course of erection, provided that in case the work was not completed within seventy working days Lawrence should pay to Summers, the owner, fifty dollars for each day in excess of seventy days occupied in the work, the rule was again stated by JUDGE PEARCE, speaking for the Court and quoting from *Ward* v. *Hudson River Bldg. Co.,* *supra,* to be, that "Where the parties have stipulated for a payment in liquidation of damages, which are in their nature uncertain and unascertainable with exactness, and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss, it will be treated as liquidated damages." And the stipulation in that case was held to be for liquidated damages and not a penalty. See also cases of *Filston Farm* v. *Henderson,* 106 Md. 355; *Graham* v. *Cooper,* 119 Md. 358.

In 2 *Joyce, Damages,* paragraph 1297, it is stated: "That in order to determine whether a sum named shall be considered liquidated damages or penalty, Courts must look at

the language of the contract, the intention of the parties to be gathered from all of its provisions, the subject of the contract and its surroundings, the ease or difficulty of ascertaining the damages recoverable for a breach, the sum designated by the parties, and from all these factors determine what view shall be taken of the question in good conscience and equity." *Turner* v. *Fremont,* 170 Fed. 259. "And where from the nature of the contract the damage cannot be calculated with any degree of certainty the stipulated sum will easily be held to be liquidated damages where they are so denominated in the instrument." *Hennessy* v. *Metzger* (Ind.), 38 N. E. 1058.

The Supreme Court of the United States in the case of *Sun Printing and Pub. Assn.* v. *Moore,* 183 U. S. 662, 46 Lawyers Ed. 378, said: "This Court has consistently maintained the principle that the intention of the parties is to be arrived at by a proper construction of the agreement made between them, and that whether a particular stipulation to pay a sum of money is to be treated as a penalty, or as an agreed ascertainment of damages, is to be determined by the contract, fairly construed, it being the duty of the Court always, where the damages are uncertain and have been liquidated by an agreement, to enforce the contract. Thus, CHIEF JUSTICE MARSHALL, in *Tayloe* v. *Sandiford,* 7 Wheat. 13, 5 L. Ed. 384, although deciding that the particular contract under consideration provided for the payment of a penalty, clearly manifested that this result was reached by an interpretation of the contract itself."

The Court in the case of *District of Columbia* v. *Harlan & H. Co.,* 30 App. Cases, Dist. of Columbia, 278, said: "There is nothing to prevent the parties from stipulating in advance that a certain sum shall be the damages which one shall forfeit to the other for failure to perform the conditions of a valid contract. Especially is this true where the damages to be sustained are uncertain in amount and cannot easily be ascertained. In the case at bar the actual amount of dam-

age that might accrue because of the failure of the plaintiff to complete the fire boat within the time stipulated would be difficult to anticipate. The loss that might be sustained by the absence of an important part of the equipment of the fire department, such as this boat, might be inestimable. The fact that a fire did not occur during the period of delay is immaterial. We are here concerned with the conditions that confronted the parties when the contract was made and the clause for damages in case of delay was inserted. It was the possible damage that might accrue from delay that governed the parties in fixing in advance the amount that should be regarded as settled and liquidated damages."

In the case of *Blackwood* v. *Liebke,* 87 Ark, 545, where the party was not actually damaged, as disclosed at the termination of the contract, owing to the fact that the price of an article there involved increased in market value after the breach of the contract, resulting beneficially to the defendant, the Court there said: "The question is not as to the status of the parties at the time when the contract terminated, but as to the status of the parties at the time they made the contract. It may be as the contract works out that it would be easy to ascertain the damage for the breach of it or to prove that there were none. But if the status of the parties at the time of the contract was such that it would be difficult or impossible to have anticipated the damage for a breach of it, and there was a positive element of damage, then under the authorities there is no reason why that may not be anticipated and contracted for in advance."

From the authorities given above it may be stated as a settled rule of law, that where the parties, at or before the time of the execution of the contract, agree upon and name a sum therein to be paid as liquidated damages, in lieu of anticipated damages which are in their nature uncertain and incapable of exact ascertainment, that the amount so named in the agreement will be regarded as liquidated damages and not as a penalty, unless the amount so agreed upon and

inserted in the agreement be grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract. And whether it is excessive or whether the damages are incapable of exact ascertainment should be determined from the subject-matter of the contract considered in the light of all the surrounding facts and circumstances connected therewith and known to the parties at the time of its execution. That these questions should be considered and determined from the contract itself, its subject-matter and the surrounding facts and circumstances connected therewith with which the parties are confronted at the time of its execution, is made necessary in order to ascertain the intention of the parties, which is one of the essential factors in deciding whether the stipulation is for liquidated damages or is a penalty. It may afterwards be disclosed that the damages actually sustained are more or less than those anticipated at the time of the execution of the contract. If more, this fact would not characterize or stamp the stipulation as a penalty unless it was so exorbitant as to clearly show that such amount was not arrived at in a *bona fide* effort, made at or before the execution of the contract, to estimate the damages that might have been reasonably expected to result from a breach of it, and that it was named as a penalty for such breach. And on the other hand, if the amount stipulated was found to be inadequate, a greater amount could not be recovered for such breach, because of the agreement between the parties that the amount so named should be in lieu of the damages resulting therefrom.

The agreement in this case expressly asserts that time is the essence of the contract, and it specifically stated that the amount to be retained upon the failure of the appellant to complete the work within the designated period is for liquidated damages "and not as a penalty." In it, too, it is said that the anticipated damages resulting therefrom were not susceptible of exact ascertainment. Whether the damages resulting therefrom were ascertainable, and whether the

amount agreed upon as liquidated damages is excessive, are questions that must be determined in deciding the character of the stipulation in the contract before us, by applying the rule as above stated.

The appellee, the United Railways and Electric Company of Baltimore, at the time of the execution of the contract was operating a city passenger railway in the City of Baltimore and its suburbs, the tracks of which passed over a bridge or viaduct spanning a depression and known as the Huntington Avenue Viaduct. Pursuant to a general plan or system inaugurated by the City of Baltimore to improve and to connect certain parks of the city, it was decided by the Park Commissioners to build a road connecting Druid Hill Park with Wyman's Park, which road was to pass under the aforesaid viaduct. To do so it was found necessary to remove certain of the supports of the viaduct and to build an arch therein sufficiently wide to enable the city to build its road thereunder. It was agreed between the railway company and the city that the company should contract for and supervise the necessary alterations to be made in the viaduct and that the city would pay the cost thereof. Pursuant to this agreement, the railway company contracted with the appellant, the bridge company, to make such alterations. The fact that the cost of this work was to be borne by the city and that it was interested in its prompt completion was brought home to the knowledge of the appellant company.

In the contract we find certain provisions in which the interest of the city in the proper performance of this work is recognized. In it we find the provision that the bridge company is to indemnify the railway company and the *Mayor and City Council of Baltimore* for any and all claims or demands due to any actual or alleged infringement of patent or patent rights in the making, vending or using of any article or device used for and in connection with the work. And in another section of the contract is found the provision whereby the bridge company agreed to procure a policy of

insurance insuring the railway company and the *Mayor and City Council of Baltimore* against all claims and suits for damages of any kind resulting either from the character of the work or the performance thereof, and agreeing to defend all actions that might be brought against said corporations. And in the contract is found the further provision that the appellant company should furnish to the company and to the Mayor and City Council of Baltimore a good and sufficient bond * * * with the Fidelity and Deposit Company of Baltimore as surety, so conditioned as to guarantee the performance on the part of the contractor of this agreement in all its particulars.

Although the city was so recognized by the contract as being interested in the work to be done by the appellant, and in its early completion, so that it could complete its road under the aforesaid viaduct, the provision for liquidated damages is silent as to the city; the language therein used is that "It being impossible to estimate the substantial damage which will result to the *company* from such delay, the said sum is agreed upon as liquidated damages which the *company* will suffer." And it is argued by the appellant, and we think with much force, that under the contract the parties thereto in arriving at the amount to be paid as liquidated damages, should have considered only the anticipated damages to the railway company resulting from such breach of the contract.

Without deciding this question, for we think it unnecessary to do so, we will confine our inquiries to such damages.

The record discloses that at the time of the execution of the contract before us, there existed a written agreement, dated the 27th day of March, 1911, between the railway company and the city in relation to the subject-matter of the agreement between the railway company and the appellant company, indemnifying the railway company for the undertakings and obligations assumed by it in its contract with the appellant company, but this contract, although offered in evidence, was excluded upon the objection of the appellant, and

its contents do not appear in the record and are unknown to us.

It is said, however, by Walter Bush, secretary of the appellant company, who largely "handled" the negotiations for has company which resulted in the execution of the contract, that he was told by the representative of the railway company, after his company had accepted the bid to do the work within a period of three months, and upon his hesitancy or refusal to sign a contract containing the aforesaid damage clause, that his refusal to do so "placed the railways in a very embarrassing position, because they in turn had made an agreement with the City Park Board which was based on the plaintiff's quotation and that it was rather late in the day for the plaintiff to withdraw." What covenants, if any, were made by the railway company to the city in the aforesaid contract by which they were to become liable to the city for the loss or damage it might sustain because of the failure to complete the work within the time named, are not disclosed by the record. If the said contract contained such covenants, then any anticipated damages resulting to the company by reason of a breach thereof, occasioned by the aforesaid breach of the contract with the appellant company, could have been properly considered with the other anticipated damages in determining the amount of the liquidated damages to be inserted in the agreement.

Our attention is called to a provision in the contract which provides that the work should "be handled at such times and in such manner as not to interfere in any way with the continuous operation of the company's equipment over the viaduct pending the reconstruction provided for by this contract." As disclosed by the record, it is conceded on the part of the appellee company that this provision of the contract was complied with, or more correctly speaking, that "they had not suffered any delay whatever from the work." This expression cannot be construed to mean that they never suffered *any* damage by reason of the failure of the appellant

company to complete the work within the time designated. But if it could be so considered, it could not have the effect of converting a stipulation which, under the rule stated, would be for liquidated damages into a penalty.

There is no evidence appearing in the record that the stipulated amount was under the rule excessive, or that the anticipated damages reasonably expected to result from a breach of the contract were easily ascertainable.

Many cars of the appellee company were run over this viaduct each day during the continuance of this work in carrying passengers to and from the city, and although it may have been that during the progress of this work the cars were at no time prevented from, or materially delayed in crossing the viaduct, it no doubt resulted in much inconvenience to the railway company and entailed upon it additional care, caution and labor, in protecting those who traveled upon its road, its employees and others, against the danger incident to such work, all of which was accompanied with additional expense. In addition to this, the railway company was no doubt subjected to other damages, including those resulting from the failure of timid or nervous persons to travel over the viaduct when the alterations were being made, thereby lessening the extent of travel over its road.

These damages, in our opinion, were of such a nature or character as not to be ascertainable by the parties at the time of making the contract, and therefore, under authorities cited, they were permitted to agree upon a stipulated amount to be paid in lieu of such damages, and having so agreed upon an amount, which was not shown to have been excessive, it was for liquidated damages, and was not a penalty.

It is conceded that the work was delayed for fifty-nine days, and therefore, if the appellant is chargeable therefor at the rate of twenty-five dollars a day, the same would amount to fourteen hundred and seventy-five dollars, or the amount retained by the appellee. It is contended, however,

by the appellant that it was delayed in the performance of this work by reason of the non-fulfillment of an alleged promise made by some one or more of the defendant's representatives, before the making of the contract in this case, that it would furnish to it certain strain sheets that had been made out by an engineer of either the appellee company or of the City of Baltimore that would be useful to the appellant in the work that it was to do and would aid it in expediting such work, which provision, however, is not contained in the contract. A number of the exceptions as to the admissibility of testimony is to the rulings of the Court in not permitting questions to be asked and in striking out answers when given in relation thereto. Upon an examination of the record we find that although the witness was not at times permitted to go into this question and give his version of such alleged promise, he was afterwards not only permitted, but urged by the Court to state all that he knew about it, which he did, until he finally said that he had nothing to add to what he had already said. Therefore if this testimony was at all admissible, the rulings complained of could in no sense have been prejudicial to the appellant.

In the action of the Court in refusing to grant the fifth, sixth, seventh and eighth prayers of the appellant predicated upon such theory of the case, we find, no error.

There are other exceptons to the admissibility of evidence as well as to the ruling of the Court in refusing the other prayers of the plaintiff and granting the defendant's prayer directing a verdict for the defendant, but in view of our decision upon the main question we think it unnecessary to refer specifically to each and all of these exceptions. These prayers of the plaintiff we think were properly refused, while the prayer of the defendant was properly granted, and we find no errors in the rulings of the Court upon the testimony, at least no reversible errors. We will therefore affirm the judgment.

*Judgment affirmed, with costs, to the appellee.*