## THE H. J. McGRATH COMPANY *v.* G. HERBERT WISNER

[No. 9, October Term, 1947.]

*Decided November 14, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Z. Townsend Parks, Jr.,* with whom were *Howard C. Bregel* and *Leroy H. List* on the brief, for the appellant.

*Charles C. Lyons,* with whom was *Michael Paul Smith* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

G. Herbert Wisner, a farmer, brought an action at law in the Circuit Court for Baltimore County against the H. J. McGrath Co., a Maryland corporation operating a cannery in that county, to recover under the common counts and under a special count for the sale and delivery of 10.99 tons of tomatoes at an agreed price of $28 per ton, of which a balance of $300 was alleged to be due and unpaid. The defendant filed general issue pleas, and a special plea of set-off, alleging that delivery was made pursuant to a written contract to deliver the whole crop; that the plaintiff delivered only a part thereof; and that under the contract the plaintiff be-

came liable to pay $300 as liquidated damages for the breach. A demurrer to the special plea was sustained. Thereafter, the case was removed to the Superior Court for Baltimore City and tried before the court without a jury. From a verdict and judgment for the plaintiff in the sum of $300, the case comes here on appeal.

It is undisputed that on March 7, 1944, the parties entered into a written contract whereby Wisner agreed to grow tomatoes on six acres of his farm in Baltimore County, and to sell and deliver all the tomatoes grown thereon during the season of 1944 (except those used domestically) to the cannery of the McGrath Company at a price of $28 per ton. Clause 12 of the contract read as follows: "It is understood by Grower that the Company, depending upon the performance of this and numerous similar agreements, has entered into and intends to enter into agreements for the sale of its products, and that if Grower shall fail to deliver to the Company any part or all of the Tomatoes herein contracted for, except as aforesaid, the Company will sustain substantial damages, uncertain in amount, and not readily susceptible of proof under the rules of evidence, and great and irreparable damage to the Company will result from a breach of this agreement on the part of Grower, and Grower hereby covenants and agrees with the Company that in case of such failure on Grower's part Grower shall and will pay to the Company the sum of $300.00 as liquidated damages and not as a penalty, and in such case the Company may deduct and retain the said sum or any part thereof from any moneys due or to become due to Grower under this agreement, but the failure of the Company to do so shall not be construed as a waiver by the Company of such damages. This provision shall not be construed as rendering this agreement an alternative one, or as giving Grower an option to perform this agreement, or to refuse to perform the same and pay the damages as specified."

Wisner testified that he delivered two loads aggregating 10.99 tons of tomatoes to the Company on August

31 and September 1, 1944. The third picking, 2½ loads of about 14 tons, he sold in the Baltimore market at a price of $1 per bushel or $33.33 per ton. He did this because he "got more money for it." The Company learned of his action and entered suit against him. Thereafter, Wisner sold 6 or 7 more loads, about 30 to 35 tons, on the open market at a price of $1.10 per bushel, or $36.63 per ton. He testified that the Company paid him $7.70 on account of the tomatoes he delivered to it, claiming the right to deduct liquidated damages of $300 from the contract price.

Robert W. Mairs, a vice-president of the Company, testified, over objection, that from past experience the Company estimated that it would normally be advantageous to a grower, during the "glut" period when market prices were low, to deliver one-third of his crop under the contract, and sell two-thirds on the open market. Taking into account the average yield per acre and the range of prices in the previous year, the prospective loss to the Company in the event of default was estimated at about $50 per acre. The $300 figure was arrived at in this way. On motion, the trial Judge struck out this testimony. We find no error in this ruling.

Mairs also testified, without contradiction, that the quoted market price of tomatoes, on the dates when Wisner delivered tomatoes to the Company, was 50 cents per bushel, or $16.66 per ton. At the conclusion of the case the Court struck out all the testimony as to the sale of tomatoes on the open market by Wisner, and entered judgment for the plaintiff in the sum of $300, the balance of the contract price.

The appellant contends that the sole question on this appeal is the correctness of the Court's ruling on demurrer. He maintains that the plea of set-off was proper, in that clause 12 of the contract was for liquidated damages, and not a penalty. We take a different view.

Whether a particular clause in a contract should be construed as liquidated damages or a penalty is a question of law. *Hammaker v. Schleigh*, 157 Md. 652, 667,

147 A. 790, 65 A. L. R. 1285; *Tayloe v. Sandiford,* 7 Wheat. 13, 20 U. S. 13, 5 L. Ed. 384. Clauses fixing damages *per diem* for delay in the performance of building contracts have frequently been sustained, where not out of proportion to the damages that might reasonably be anticipated. *Baltimore Bridge Co. v. United Rys.,* 125 Md. 208, 93 A. 420; *United Surety Co. v. Summers,* 110 Md. 95, 72 A. 775. The tendency of the more recent cases has been to sustain agreements for liquidated damages where actual damages are difficult of ascertainment. Compare *Boston Iron & Metal Co. v. United States,* 4 Cir., 55 F. 2d 126. But where the sum fixed is the same for a total as for a partial breach, such a clause is generally construed as a penalty. *Mt. Airy Milling Co. v. Runkles,* 118 Md. 371, 379, 84 A. 533, 535, L. R. A. 1915E, 373. And it was said in that case: "Where the agreement has been partially performed, it is the policy of the courts to regard the damages as a penalty, and allow the plaintiff to recover only such damages as he has actually sustained." Compare *Poinsettia Dairy Products v. Wessel Co.,* 1936, 123 Fla. 120, 166 So. 306, 104 A. L. R. 216, and *Greenblatt v. McCall & Co.,* 1914, 67 Fla. 165, 64 So. 748.

The Maryland cases seem to be in accord with the rule announced in the *Restatement, Contracts,* sec. 339: "*(1)* An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless *(a)* the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and *(b)* the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." Compare *Willson v. Baltimore,* 83 Md. 203, 34 A. 774, 55 Am. St. Rep. 339. See also *Sutherland, Damages,* 3d Ed., sec. 283. In comment b of the *Restatement* it is said that where a contract "promises the same reparation for the breach of a trivial or comparatively unimportant stipulation as for the breach of the most important one or of the whole contract, it is obvious

that the parties have not adhered to the rule of just compensation."

The appellant relies strongly upon the case of *Colma Vegetable Association v. Bonetti,* 1928, 91 Cal. App. 103, 267 P. 172. That case, however, turned to some extent upon the provisions of a Co-operative Marketing Act, in effect in that state, and upon the fact that since the Association had no authority to buy in the open market, damages to the members were uncertain. Many cases of this type are collected in 98 *A. L. R.* 1420, and in earlier notes. A note in 138 *A. L. R.* 594, cites cases applying a different principle where sales of staple goods, readily obtainable in the market, are involved, especially *Rice v. Schmid,* 1941, 18 Cal. 2d 382, 115 P. 2d 498, 138 A. L. R. 589. See also comment on the latter case in *Associated Press v. Emmett,* D. C., 45 F. Supp. 907, 916.

In the case at bar the specified damages are in no way proportionate to the possible extent of the prospective breach, nor do we find that the prospective damages for failure to deliver tomatoes having a ready market are incapable or difficult of ascertainment. Under the facts of this case we hold that clause 12 of the contract is a penalty and hence unenforceable.

Under the Maryland practice a plea of set-off may be maintained for unliquidated as well as liquidated damages. Code, Art. 75, sec. 16. In this case, however, the plea relied exclusively upon clause 12 of the contract. As thus particularized, we are inclined to hold that it was open to demurrer, and that the trial court was correct in sustaining the demurrer to the plea. Compare *Roth v. Baltimore Trust Co.,* 161 Md. 340, 158 A. 32, and *Mt. Airy Milling Co. v. Runkles, supra.* However, it does not follow that the defendant was precluded from showing damages by way of recoupment. It is generally held in Maryland that a defendant in an action of assumpsit may recoup losses under the general issue plea. *Sullivan v. Boswell,* 122 Md. 539, 553, 89 A. 940; *Poe, Pleading,* 5th Ed., sec. 616; compare *Williston, Con-*

*tracts,* Rev. Ed., sec. 1484. This is true even though he may not be entitled to an affirmative judgment. *Impervious Products Co. v. Gray,* 127 Md. 64, 68, 96 A. 1. See also *Petite v. Homes, Inc.,* 184 Md. 377, 383, 41 A. 2d 71.

It was suggested in argument that the plaintiff could not recover upon any theory in this case because of his deliberate and wilful breach. It is a general rule that a party who has deliberately and wilfully breached a contract cannot recover thereunder for part performance. See *Williston, Contracts,* Rev. Ed., secs. 1473, 1474, and note 22 Ill. L. R. 315. However, some courts have allowed recovery on the basis of *quantum meruit* or *quasi*-contract. In contracts for the sale of goods, the matter is covered by the Uniform Sales Act, sec. 44, adopted in Maryland as Code, Art. 83, sec. 62, which provides: "(1) Where the seller delivers to the buyer a quantity of goods less than he contracted to sell, the buyer may reject them; but if the buyer accepts or retains the goods so delivered, knowing that the seller is not going to perform the contract in full, he must pay for them at the contract rate. If, however, the buyer has used or disposed of the goods delivered before he knows that the seller is not going to perform his contract in full, the buyer shall not be liable for more than the fair value to him of the goods so received." Normally, the fair value would be the price in the open market. *Guaranty Trust Co. v. Gerseta Corp.,* 212 App. Div. 76, 208 N. Y. S. 270; *Williston, Contracts,* Rev. Ed., sec. 1474. According to the testimony in the case at bar the market value of the tomatoes delivered to the Company was $183.10. Unless it could he held that the payment of the $7.70 constituted an acceptance of the goods with knowledge of the seller's breach, the buyer could not be held liable for the contract price. Obviously, the buyer was not in a position to return the goods when he learned of the breach.

The further question arises as to the damages sustained by the buyer, as a result of the seller's failure

to deliver the remainder of his crop. The *Restatement, Contracts,* sec. 357, (comment g) states: "The plaintiff's right to restitution is merely to the excess of benefit received over the harm suffered. It is necessary for the plaintiff to show with a reasonable degree of certainty that there is such an excess and its amount, in order to get judgment." See also Illustration 5. Upon his own showing the plaintiff received $275 in excess of the contract price, for the tomatoes he sold on the open market. Presumably the buyer was obliged to purchase an equivalent amount in the open market to replace those the seller diverted. If he is to be charged with the contract price of the tomatoes delivered to him when the market price was below the contract price, he should clearly be entitled to recoup for his subsequent loss. If, on the other hand, the seller can recover only the market price of the tomatoes he delivered, the buyer should be charged with the difference as against his claim of damage. Since recovery is allowed only to prevent unjust enrichment, neither party should profit at the expense of the other. Upon either theory, the undisputed facts of the case would lead to the conclusion that the verdict should have been for the plaintiff in the amount of $25. As this amount is below the jurisdiction of the Court (*Rohr v. Anderson,* 51 Md. 205, 218; *Poe, Pleading,* 5th Ed., sec. 31) a judgment of *non-pros.* should have been entered under Code, Art. 26, sec. 18.

> *Judgment reversed and judgment of non-pros. entered upon verdict for $25, costs in this Court to be paid by the appellee, costs below by the appellant.*