Cristie C. CAPUTO, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 636-56.

United States District Court
D. New Jersey.

Dec. 23, 1957.

569

John E. Hughes, Upper Montclair, N. J., for plaintiff.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Barbara A. Morris, Asst. U. S. Atty., Montclair, N. J., for the Government.

WORTENDYKE, District Judge.

This Federal Tort Claims Act case (28 U.S.C. §§ 2674 and 1346(a) (b)) arises out of a collision which involved a light Ford "pick-up" truck owned and operated by the plaintiff and a personnel bus owned by the defendant, assigned to the United States Air Force, and operated by its employee while acting within the scope of his employment.

The collision occurred about 8:30 p. m. on August 30, 1954, upon a concrete-paved dual highway known as U. S. Route 1, in the City of Linden in this District. It was raining and the highway pavement was west and slippery at the time of the occurrence complained of. The two vehicles came into contact at a point on the south (or west) bound portion of the dual highway, about in front of the "Swan Motel" and some 100 yards to the east or north of Woodlawn Avenue, which intersects the highway at right angles thereto.

Claiming to have suffered personal injuries as well as damage to his Ford truck, plaintiff charges that the operator of defendant's bus drove his vehicle at a fast and excessive rate of speed, in violation of the provisions of the Motor Vehicle and Traffic Acts of the State of New Jersey, N.J.S.A. 39:1–1 et seq., without reasonable and proper observations, without due regard for the rights of others on the highway, without having his vehicle under proper control and that he was in other respects negligent, thereby proximately causing the collision of which complaint is made.

Defendant denies the charged negligence and affirmatively pleads that the injuries and damage for which recovery is sought were caused by the plaintiff's own negligence.

It is elementary that negligence is never presumed and that in fact there is a presumption against negligence, especially in cases of this kind. The burden rests upon the plaintiff to prove his charge of negligent causation, as well as damages, by the preponderance of the evidence. I am unable to find from the evidence that plaintiff has discharged this burden. A finding of causal negligence on the part of the defendant's bus driver could be arrived at only as a result of pure speculation. "It is axiomatic that recovery cannot be had merely upon proof of the happening of an accident. Negligence is never presumed; it, or the circumstantial basis for the inference of it, must be established by competent proof, * * *." Murphy v. Terzako, App.Div.1951, 14 N.J.Super.

254, 259, 82 A.2d 1, 3, citing Gentile v. Public Service Coordinated Transport, App.Div.1951, 12 N.J.Super, 45, 78 A.2d 915. Nor do I find in the proofs any "circumstantial basis for the inference" of causal negligence.

On the issue of liability plaintiff testified in his own behalf and also adduced the testimony of a police officer, who produced records of an investigation made by him with two other officers, and who authenticated a diagram made by one of them and a signed written statement taken from the bus driver. Plaintiff testified that he was driving his truck in the center of the three south bound lanes of the dual highway, and slowed his vehicle to a speed of from two to five miles per hour as he approached the Woodlawn Avenue intersection to permit certain vehicles entering the highway from Woodlawn Avenue to turn right into the south bound direction on the highway. Plaintiff says that when his vehicle had actually entered the intersection, he suddenly developed a loss of memory; and that when he regained consciousness, he observed the front of the bus near the left door of his truck cab. He has no recollection of being conscious of any impact between the vehicles, and he testified that he last noticed the bus, which was then traveling in the lane nearest to the dividing center isle, at a point some distance to the north upon a bridge in the City of Elizabeth where he had passed it. Plaintiff tells us further, that as he slowed his vehicle on approaching the Woodlawn Avenue intersection, he did not see the bus, and that his reduction of his truck's speed commenced about 100 feet to the north of Woodlawn Avenue. According to his testimony, he had previously been traveling at 30 miles an hour. The prescribed speed limit in the immediate locality was 45 miles an hour. The police diagram purports to disclose the relative positions of the two vehicles when the officers arrived at the scene. Plaintiff's truck is shown at right angles to the direction of vehicular travel, with its front toward the safety isle, one-half of its length occupying part of the left hand and the other half part of the center of the three lanes of travel. The bus is shown in a diagonal position to the direction of travel, with its front near to the front of the truck, and its length occupying portions of the same two lanes. The left front corner of the bus was about five feet from the nearest point in the edge of the dividing isle. Attached to this diagram and authenticated by the police officer is a signed handwritten statement of Lee A. Asbury, the driver of the bus, which states that the plaintiff passed him on the right, and then cut directly in front of the bus. The bus river cut to the right to try to avoid collision, but due to the rain, the bus slid into the truck. The bus driver adds that the truck cut so closely in front of the bus that the driver of the latter vehicle had no chance of stopping. There were also marked in evidence, on the plaintiff's case, photographs of each of the vehicles involved in the collision, as well as a photograph of the scene delineated in the police diagram and described in the testimony. Evidence of physical damage on each of the vehicles is disclosed by these photographs. Most of the damage to the truck and the location of the most forceful impact against it appears to be on the left side of the left front fender and of the cowl just forward of the hinges of the left door of the cab. While there is evidence of marks on the point of the left rear fender of the truck, no indentation thereof appears, and the rear view of the vehicle discloses no evidence of contact therewith except two slight indentations in panels of the tail gate which plaintiff admitted existed before the collision. The photograph of the left front of the bus indicates that the lower left corner of the body received a crumpling blow, and there is evidence of impact to the left headlight, left foglight and left portion of the front panel of the body. There is no evidence of damage to the right half of the front of the bus or to its right front corner or right side.

At the conclusion of plaintiff's evidence, defendant moved for dismissal under Fed.Rules Civ.Proc. Rule 41(b), 28 U.S.C., but the Court declined to render any judgment until the close of all of the evidence as authorized by the provisions of the Rule. Plaintiff's argument in opposition to the motion, however, indicated that he relied upon a theory founded upon the mark or marks on the left rear fender of the truck, that the initial contact between the vehicles occurred at that location on the truck and caused the latter vehicle to swing athwart the path of the bus. Despite repeated efforts to reconstruct the collision from the photographs of the vehicles, I am unable to reconcile the obvious conditions and probabilities with the theory of happening which the plaintiff advances.

Defendant called two witnesses upon the issue of liability, i. e., the bus driver and one of his passengers. The former testified that as he approached the place where the collision occurred, the traffic was heavy, the road surface was wet, it was raining, but there was no fog. The headlights of the bus were lighted and his windshield wipers were operating. The vehicle had been traveling in the right lane and overtaking a tractor-trailer which caused the bus to move over to its left and ultimately to proceed in the left or inside lane. As he was traveling in the latter lane, he noticed, by means of his rear vision mirror, the lights of the vehicle, which later proved to be that of the plaintiff, following him closely behind in the same lane. The bus was then traveling at some 30 to 35 miles an hour, according to the testimony of its driver, who further testified that plaintiff's vehicle passed the bus on the right. When it had reached a point approximately 100 to 125 feet ahead, it suddenly cut across the path of the bus, whereupon the driver of the latter vehicle applied his brakes and endeavored to pull to his right in order to avoid or minimize the inevitable collision. The bus driver denies that there was any contact between his vehicle and any portion of the rear of the plaintiff's truck, and that there was any contact between the vehicles as the truck was passing the bus. The evidence persuasively indicates that the vehicle of the plaintiff, when it traversed the lane in which the bus was traveling, struck the dividing safety isle of the dual highway and came to rest so closely in front of the approaching bus as to render a collision unavoidable.

Defendant also called as a witness Edna M. Small, one of the passengers who was riding in the bus at the time of the accident. The vehicle was then en route to Camp Kilmer, New Jersey, and contained a group of young ladies intending to participate in a dance at the U.S.O. Club at that military post. Miss Small was acting as chaperone, and was sitting in the first of the seats in the bus to the right of the aisle. She testified that she noticed the truck at right angles to the course and in front of the bus at a distance of 15 to 20 feet ahead and that the bus swerved to the right but its left side contacted the left door of the truck cab. This witness confirmed the bus driver's testimony that he applied his brakes, but her testimony indicates that she became aware of the brake application when she noticed the truck at the short distance ahead last above indicated.

I can find no circumstantial evidence in this case which might support defendant's liability. While the trier of the facts may reach a conclusion founded on circumstances alone "mere guess or conjecture cannot be substituted for legal proof * * *. 'The claimed conclusion from the offered fact must be a probable or a more probable hypothesis, with reference to the possibility of other hypothesis.' 1 Wigm.Ev. (2d Ed.) § 38." Jackson v. Delaware L. & W. R. R. Co., E. & A.1933, 111 N.J.L. 487, 491, 170 A. 22, 24. As trier of the facts in the case at bar, I do not find the "circumstances * * * so strong that a jury might properly, on grounds of *probability rather than of certainty,* exclude the inference favorable to the defendant."

Austin v. Pennsylvania R. R. Co., E & A. 1911, 82 N.J.L. 416, 417, 81 A. 739; Steskovitz v. West End Bldg. & Loan Ass'n, E. & A.1940, 125 N.J.L. 435, 15 A. 2d 778.

To find in plaintiff's favor upon the issue of liability I would be compelled to speculate. This I am not permitted to do. Having resolved the issue of liability in favor of the defendant, the evidence respecting damages becomes immaterial. I, therefore, make no finding with respect to that issue.

This opinion shall be deemed to constitute my findings of fact and conclusions of law, and an order may be presented in conformity therewith.