**LANDOVER MALL LIMITED PARTNERSHIP, a Maryland Limited Partnership, Plaintiff,**

v.

**KINNEY SHOE CORPORATION, a New York Corporation, t/a Kinney Shoes, Defendant.**

**Civil No. AW–95–744.**

United States District Court, D. Maryland.

Oct. 25, 1996.

James E. Gray, David H. Hollander, Jr., and Lisa V. Gianneschi, of Baltimore, MD, for plaintiff.

Michael Patrick McQuillen, and John Jay Range, of Washington, DC, for defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Presently pending before the Court for consideration are Plaintiff's Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment. Both parties have filed Responses and replies. Additionally, the Court held a hearing in this matter on October 9, 1996. After considering the entire file and listening carefully to oral arguments presented at the hearing, the Court finds that for the reasons stated below, Plaintiff's Motion for Summary Judgment will be granted and Defendant's Cross–Motion for Summary Judgment will be denied.

## I. BACKGROUND

The following facts are undisputed. On April 12, 1971, Plaintiff, the landlord, entered into a twenty-year Landover Mall Regional Shopping Center Lease ("Lease") with Prince George Kinney Shoe Corporation ("P.G. Kinney"), a tenant. Compl. at ¶ 4. Additionally, Defendant, Kinney Shoe Corporation,[1] signed a Guaranty in which it guaranteed P.G. Kinney's obligations with respect to the Lease. Compl. at Exhibit 7. Under the Lease, P.G. Kinney agreed to pay Plaintiff minimum annual rent, percentage rent, and additional rent.[2] Also, the Lease contained a continuous operation clause in Article Two (G). The clause provided in pertinent part:

> Upon the commencement of the term of this lease, [t]enant shall proceed with due dispatch and diligence to open for business on the demised premises and shall thereafter continuously, actively and diligently operate its said business on the whole of the demised premises.... [I]f [t]enant shall have failed or refused to remain open for business for one or more full business days, not less than an increase of one hundred percent (100%) of the minimum rent and percentage rent applicable thereto.

On or about April 12, 1971, P.G. Kinney assigned its interest in the Lease to Defendant. Compl. ¶ 5. On March 4, 1974, Plaintiff consented to the assignment. Compl. at Exhibit 2. Since the execution of the Lease, there were three Amendments between 1973 and 1991.[3] Compl. at Exhibit 3, 4, 5.

Subsequently, on January 30, 1994, Defendant closed approximately 300 Kinney stores, including the Landover Mall location. Williams Depo. at 45–47. These closings were pursuant to a corporate decision made to keep from losing the entire chain. Id. As a result of Defendant closing its Landover Mall Kinney Shoe store, Plaintiff notified Defendant that if it did not re-open for business, Defendant would be in default under its Lease. In addition, Plaintiff advised Defendant that if it did not re-open, its minimum annual rent would be increased by 100%. Defendant's Mem.Supp.Summ.J. at Exhibit A. Defendant failed to re-open its store.

Plaintiff filed the instant action with this Court on March 14, 1995. In the complaint, Plaintiff charged that Defendant is in default of the Lease and its Amendments because it has failed to pay rent as scheduled and to operate a business from all of the premises. Additionally, Plaintiff alleged that according to the Guaranty, Defendant is obligated to pay all amounts owed under the Lease and

---

1. Kinney Shoe Corporation was the parent corporation of P.G. Kinney.

2. Tenant was not obligated to pay the percentage rent until its gross sales exceeded a certain amount. The additional rent included real property taxes, common area usage cost, and other associated charges.

3. In 1973, the Amendment covered the expansion of P.G. Kinney's premises to 7,515 square feet and the increase of the minimum rent, the percentage rent base, and other costs. The 1984 Amendment permitted Defendant to subdivide its leased premises. The existing Kinney Shoe store would encompass 5,427 square feet of the premises. While, a new operation known as Lady Footlocker would constitute the remaining 2,412 square feet. Defendant also agreed to pay Plaintiff certain amounts for the minimum annual rent, the percentage rent if gross sales exceeded a certain figure, and the other associated charges for each space. Finally, in 1991, Plaintiff and Defendant made a third Amendment to the lease. This Amendment, inter alia, extended the term of the Lease for an additional ten years, commencing May 11, 1992 and expiring May 10, 2002. In addition, adjustments were made to the minimum annual rent, the percentage rent base, and the other associated costs.

all costs disbursed by Plaintiff, including attorney's fees.

## II. *SUMMARY JUDGMENT*

Summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The movant must demonstrate that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). While the Court views the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), the mere existence of a "scintilla of evidence" is not enough to frustrate the motion. To defeat it, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## III. *DISCUSSION*

■ The only issue before the Court is whether Article Two (G) is an enforceable liquidated damage clause or a penalty. This is ordinarily a question of law. *McGrath Co. v. Wisner,* 189 Md. 260, 264, 55 A.2d 793 (1947) (citing *Hammaker v. Schleigh,* 157 Md. 652, 657, 147 A. 790 (1929); *Tayloe v. Sandiford,* 7 Wheat. 13, 20 U.S. 13, 5 L.Ed. 384 (1822)). If there is any doubt as to whether Article Two (G) is an enforceable liquidated damage clause or a penalty, it must be construed as a penalty. *Willson v. The Mayor and City Council of Baltimore,* 83 Md. 203, 212, 34 A. 774 (1896).

■ Under Maryland law, in order to find that an agreed upon term is an enforceable liquidated damage clause, the following must be shown: "(1) [the] parties, at or before the time of execution of the contract, agree[d]

upon and name[d] a sum therein to be paid as liquidated damages; and (2) [that sum was] in lieu of anticipated damages which [were] in their nature uncertain and incapable of exact ascertainment." *Baltimore Bridge Co. v. United Rys. and Elec. Co.,* 125 Md. 208, 214, 93 A. 420 (1915). Finally, if the above is established, the specified amount will be viewed as liquidated damages unless the sum is "grossly excessive and out of proportion to the damages that might reasonably have been expected to result from such breach of the contract." *Id.* at 215, 93 A. 420. Simply put, the sum must have been a reasonable estimate of fair compensation for the harm that Plaintiff would have suffered as a result of Defendant violating Article Two (G). *E.g., Traylor et ux. v. Grafton et ux.,* 273 Md. 649, 662, 332 A.2d 651 (1975).

■ In this case, it is clear that the first element has been met. Article Two (G) of the Lease named a sum of 100% of the minimum rent and the percentage rent to be paid by the tenant if it violates the relevant portion of that provision.[4] Additionally, at the time of execution, the parties to the Lease agreed to Article Two (G). This is evident from both parties' signatures on the Lease.

Also, the Court finds that the actual amount of damages due to a breach of Article Two (G) by the tenant were impossible to predict with any degree of accuracy. At the time the parties entered the Lease, neither party could compute the effects that the store's closure would have on Plaintiff. The closing could affect the Mall's vacancy rate, tenant mix, customer draw, profitability, or Plaintiff's ability to relet the space. Gersh Aff. ¶ 12.; Plaintiff's Mem.Supp.Summ.J. at 9. Indeed, Defendant's own expert stated that the damages Plaintiff might incur in the instance Article Two (G) was violated could not have been forecasted. O'Day Depo. at 88. Therefore, the second element has been established.

Finally, the Court must determine whether doubling the minimum rent is a reasonable

---

**4.** Because the Landover Mall Kinney Shoe store's gross sales never exceeded the minimum threshold, the payment of 100% of the percent-age rent was not an issue. Defendant's Mem. Supp.S.J. at 7; Gersh Depo. at 86.

approximation of the damages which might result in the instance the store ceased operation. In making this determination, the Court must continue to look at the facts and the circumstances surrounding the Lease at the time it was made. *Baltimore Bridge,* 125 Md. at 215, 93 A. 420.

In 1971, 1973, 1984, and 1991, the actual dollar figures of the liquidated damage provision were respectively $60,240, $120,240, $86,832,[5] and $100,00 initially with an annual increase of $5,427. Compl. at Exhibit 1, 3, 4, 5. To determine what amount was owed to Plaintiff after a breach of Article Two (G), one of the above figures would be multiplied by the number of years remaining under the term of the Lease.

At the time the parties executed the Lease, it was known that a violation of Article Two (G) might have some effects upon the future success of Plaintiff. Moreover, it was known that Plaintiff would suffer actual and consequential damages as a result of these effects. However, it was unknown by either party just what the actual and the consequential damages would be. For example, the fact that the Kinney Shoe store was no longer located inside Landover Mall may have kept Kinney's regular customers from shopping at the Mall. In turn, this may have deprived other Landover Mall stores of those customers' business, which may have decreased any percentage rent that Plaintiff may have received from those retail stores. Simply put, an empty store inside a Mall could have a substantial impact on the other retail businesses and the overall prosperity of the Mall itself. Additionally, As previously stated, there were a number of other major effects which Plaintiff could have consequently experienced from an Article Two (G) violation. *See supra* at p. 6. As a result, Plaintiff could have subsequently incurred more damages, even beyond mere rent. Therefore, based on all the effects that the closure of the Landover Mall Kinney Shoe store might have had on Plaintiff at the time of entering the Lease, the Court believes that paying a total of $60,240 multiplied by

the number of years remaining under the Lease was reasonably related to the actual and consequential damages that Plaintiff might have anticipated.

Defendant argues that based upon Plaintiff knowing before agreeing to the 1991 Amendment that: (1) Defendant had never paid percentage rent to Plaintiff for the Landover Mall Kinney Shoe in its twenty years at the Mall; (2) the store was undergoing declining sales and profits; and (3) Plaintiff thought of the store as a "sickly operation" and "marginal," 100% of the minimum rent was unreasonable. The Court disagrees. The fact that Plaintiff was aware of the above information does not change the reality that the closing of the Landover Mall Shoe store might have still affected Plaintiff's vacancy rate, tenant mix, customer draw, profitability, or ability to relet the space. Gersh Aff. ¶ 12.; Plaintiff's Mem.Supp.J. at 9. As a result, Plaintiff would have suffered damages. Therefore, whether the liquidated damage provision required Defendant to pay $60,240 or $100,000 with an annual increase of $5,427, multiplied by the number of years remaining under the Lease, the Court finds the sum was reasonably related to the damages that Plaintiff would have expected to suffer.

In addition, the person responsible for negotiation of the 1991 Amendment on behalf of Plaintiff stated that prior to its signing, he had no concerns as to whether Defendant would live up to the terms of the 1991 Amendment. Gersh Depo. at 75. Indeed, he thought that Defendant would "weather the storm" and "do something to spike their sales." *Id.* Furthermore, Defendant was more likely than Plaintiff to be aware of its own financial state and its likelihood of rebounding at the time the 1991 Amendment was negotiated. Thus, the onus was on Defendant to negotiate changes to Article Two (G) based on what it knew. Additionally, it has already been shown that during the time that the parties negotiated the Lease and each Amendment, including the 1991 Amendment, Defendant had opportunities to negoti-

---

**5.** This figure reflects the actual dollar figure of the liquidated damage provision with respect to the Kinney Shoe store. The amount of liqui-

dated damages for closing Lady Footlocker is not at issue.

ate changes to Article Two (G). However, Defendant failed to do so. Gersh Aff. ¶¶ 9–11; Sadel Aff. ¶ 4; Defendant's Mem.Supp. S.J. at 4, 6. Also, Defendant was familiar with the 100% minimum rent in Article Two (G) because Defendant and a related entity signed two other leases with Plaintiff which included it.[6] Gersh Supp.Aff. ¶¶ 5a–b.

Finally, Defendant raises several additional contentions. Defendant argues that because Article Two (G) was "designed to compel performance or to penalize performance" of the Lease, it is a penalty as opposed to an enforceable liquidated damages provision. Defendant points specifically to several occurrences in which Plaintiff reminded Defendant of Article Two (G) after being notified of Defendant's probable closing. Defendant's Exhibit A at 12–15. The Court does not agree with Defendant's contention. Under those circumstances, it is reasonable that Plaintiff would remind Defendant of the terms of their Lease agreement when Defendant has stated or it appears that Defendant is about to act contrary to them. This does not show that the clause was "designed to compel performance." Rather, it shows that Plaintiff has a rightful interest in recouping any damages it may endure due to Defendant's breach.

Also, Defendant argues that there is a material factual dispute as to whether Plaintiff could have reasonably expected to suffer certain damages and that Plaintiff's actual damages must be examined in order to determine whether Article Two (G) was reasonable. Defendant's Mem.Supp.Summ.J. at 21–24. However, the Court finds no merit in either of these arguments. The Court has discussed the probable effects that Defendant's closure would have had on Plaintiff at the time the leased was executed. Additionally, the Court has already determined that the damages as a result of those effects were uncertain. To now permit Defendant to speculate what damages Plaintiff should have expected to incur or to compute what damages Plaintiff actually suffered would eliminate the purpose of a liquidated damage clause. The mere fact that Plaintiff actually sustained less damages than it is entitled to under the liquidated damage provision does not make the clause a penalty if it is found to be reasonable. *Baltimore Bridge*, 125 Md. at 215, 93 A. 420. Moreover, as the Court already indicated, Defendant had several opportunities to negotiate changes to Article Two (G) based on its own knowledge, but Defendant failed to do so.

Looking at the circumstances overall, the Court finds that Article Two (G) was a reasonable estimate of damages and was not "grossly excessive." Accordingly, the Court finds that Article Two (G) is an enforceable liquidated damage clause.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment as to liability will be granted and Defendant's Motion for Summary Judgment will be denied. The Court will refer this case to a Magistrate Judge in order to determine the proper amount of damages, prejudgment interest, attorney's fees, and costs after the appropriate set-offs and reductions.

### ORDER

Upon consideration of Plaintiff's Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment, together with both parties' Responses and the underlying record, and the reasons set forth in the foregoing Memorandum Opinion, IT IS this 25th day of October, 1996 ORDERED:

1. That Plaintiff's Motion for Summary Judgment as to liability BE, and the same hereby IS, GRANTED; and

2. That Defendant's Cross–Motion for Summary Judgment BE, and the same hereby IS, DENIED; and

3. That this case shall be referred to a Magistrate Judge to determine the proper amount of damages, prejudgment interest,

---

**6.** Richmond Brothers, a related entity of Defendant, signed a lease which included the exact same Article Two (G) provision that is at issue.

attorney's fees, and costs after the appropriate set-offs and reductions; and

4. That the Clerk of the Court mail copies of the Memorandum Opinion and this Order to all counsel of record.